**CARPENTER, HAZLEWOOD, DELGADO & BOLEN LLP**
Attorneys at Law
1400 E. Southern Ave., Suite 400
Tempe, Arizona 85282-5691
(480) 427-2800, Facsimile (480) 427-2801
minuteentries@carpenterhazlewood.com
Mark K. Sahl 025729
Timothy R. Grimm 019110
Edith I. Rudder 020650
KANGAROOM.0003

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kangaroo Manufacturing, Inc., a Florida corporation,<br><br>                   Plaintiff,<br><br>v.<br><br>Amazon.com, Inc., a Delaware corporation,<br><br>                   Defendant. | Case 2:17-cv-01806-SPL<br><br>PLAINTIFF'S OPPOSITION TO AMAZON.COM'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

Plaintiff Kangaroo Manufacturing, Inc. ("Kangaroo") hereby opposes Amazon's Motion for Partial Summary Judgment (the "Motion"). Kangaroo respectfully requests that this Court deny the Motion filed by Defendant Amazon.com, Inc. ("Amazon").

## I. INTRODUCTION

Plaintiff Kangaroo is a manufacturer of toy and novelty goods. Kangaroo sells its products to various brick and mortar stores such as Party City and TJ Maxx, as well as to various authorized sellers for resale on Amazon. Kangaroo was one of the first toy companies to create novelty emoji product lines, and has had great success with its emoji

1

beach balls and latex balloons. Kangaroo's emoji beach balls are currently the top selling beach ball on Amazon and have made the top 100 toy list.

As a product innovator, Kangaroo takes great measures to protect its intellectual property. Kangaroo copyrights its product images and artistic designs, including the images and designs for emoji beach balls and balloons at issue in this action, to try to prevent unsafe and untested knockoffs from being sold as authentic Kangaroo products. Kangaroo also monitors and routinely reports infringing images and products to Amazon through its various intellectual property infringement reporting systems.

While Amazon publicly asserts that it is fighting counterfeits, its treatment of Kangaroo's intellectual property rights show just the opposite. Kangaroo reported infringement of its copyrighted emoji designs by sellers making counterfeits over and over again. In April 2016, Kangaroo reported that Amazon itself was selling counterfeit product, as confirmed by test purchases. Rather than take down unauthorized sellers, Amazon took down everyone – except itself. Kangaroo brought this action in response to the egregious mishandling of Kangaroo's intellectual property rights.

## II. STATEMENT OF FACTS

Kangaroo incorporates its separated filed Statement of Controverted Facts ("SCF"), the Declaration of David Schnider and the exhibits thereto, and the Declaration of Timothy Grimm and the exhibits thereto.

…/

…/

## III.  LEGAL STANDARDS

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A party seeking summary judgment bears the burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir.1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir.1992)).  The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate in its motion that no reasonable trier of fact could find for the non-moving party. *Celotex*, 477 U.S. at 323. "[T]rial courts should act ... with caution in granting summary judgment" and may "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

.../

.../

.../

3

# IV. SUMMARY JUDGMENT IS NOT APPROPRIATE ON KANGAROO'S FEDERAL CLAIMS

### a. Evidence Supports that Amazon Distributed Copyrighted Works and Failed to Take Plaintiff's Images Down For Unauthorized Listings Despite Numerous Demands, Thus Subjecting Amazon to Claims for Willful Copyright Violations

Amazon argues that it is not liable for copyright infringement for its display of Kangaroo's copyrighted images because it did not actually copy the images, but only displayed images other sellers uploaded. Motion at 5-6. Amazon relies on the court's finding in *Milo & Gabby* in support of its argument that it was a passive third party who did nothing with respect to the photos. Amazon's reliance on *Milo & Gabby* is misplaced for two reasons.

First, unlike in *Milo & Gabby*, there is evidence here that Amazon "actively reviewed, edited, altered or copied Plaintiffs' images." Motion at 5, SCF, ¶¶ 28, 29. Kangaroo reported the improper use of Kangaroo images through Amazon's copyright infringement reporting system. *Id.* Amazon reviewed the reported infringement, and in this case failed to resolve the complaints for over two months, not until Kangaroo brought suit against Amazon. SCF, ¶ 29. A jury could find liability for Amazon on these facts.

Second, even if it were to avoid liability for infringement of Kangaroo's images, Amazon is subject to copyright infringement for its own direct sales of counterfeit product. Distribution of counterfeit copyrighted products subjects the distributor to liability for copyright infringement. 17 U.S.C. § 501; *Microsoft Corp. v. Black Cat Computer Wholesale, Inc.*, 269 F. Supp. 2d 118, 123 (W.D.N.Y. 2002). In *Black Cat*, the Court found

willful infringement based on Black Cat's "willful blindness regarding the counterfeit nature of the infringing products as Defendants were aware of authorized distributors but did not utilize them, ignored facts suggesting that their suppliers' software was not genuine, and continued to obtain and distribute counterfeit software after being specifically requested by Plaintiff to cease and desist therefrom." *Id.*

Like in *Black Cat*, Amazon was aware of Kangaroo and its copyright in the various products, based on the numerous copyright infringement reports by Kangaroo. SCF, ¶¶ 28, 29. Kangaroo reported the counterfeit sales on numerous occasions and informed Amazon that the company itself was distributing product utilizing Kangaroo's marks and artwork. *Id.* Kangaroo explicitly stated that it had purchased goods and found they were counterfeit. *Id.*; *see also* Schnider Decl., ¶¶ 4-7. Amazon knew that it did not purchase goods from Kangaroo directly. SCF, ¶ 30. Despite the reports, Amazon continued to directly sell counterfeit products – and went so far as to remove <u>all</u> sellers other than Amazon itself, the seller that was distributing counterfeit product. *Id.*, ¶ 29. Therefore, at a minimum, the copyright infringement claims for Amazon's distribution of copyrighted material should proceed.

Amazon cites authority for the notion that a "defendant does not willfully infringe if the 'infringing works were produced under color of title, such as under a reasonable belief that the infringer possesses a license or implied license.'" Motion at 7 (citing *Evergreen Safety Council v. RSA Network, Inc.*, 697 F. 3d. 1221, 1228 (9th Cir. 2012)). Amazon claims that it responded and removed complained of material "where appropriate". Motion

5

at 8. Amazon ignores the substantial evidence that it took weeks and countless requests to remove unauthorized sellers, and that Amazon took action against sellers identified as authorized while Amazon itself continued selling counterfeit goods. SCF, ¶¶ 28, 29. These facts could support a jury finding of willfulness based on Amazon's actions and inactions. *See, e.g., Black Cat*, 269 F. Supp. 2d at 123.

### b. The DCMA Does Not Protect Amazon From Liability Because Amazon Was Informed of Infringement and Failed to Remove Content

The DMCA safe harbors "do not render a service provider immune from copyright infringement. They do, however, protect eligible service providers from all monetary and most equitable relief that may arise from copyright liability. Thus, even if a plaintiff can show that a safe harbor-eligible service provider has violated her copyright, the plaintiff will only be entitled to the limited injunctive relief set forth in 17 U.S.C. § 512(j)." *Corbis Corp. v. Amazon.com, Inc.*, 351 F.Supp.2d 1090, 1098 (W.D. Wash. 2004), *overruled on other grounds, Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F. 3d 612 (9th Cir. 2010).

Amazon asserts that it is entitled to protection as a service provider under 17 U.S.C. § 512(j). To qualify for the § 512(c) safe harbor, a service provider must show that:

(1) it has neither actual knowledge that its system contains infringing materials nor an awareness of facts or circumstances from which infringement is apparent, or it has expeditiously removed or disabled access to infringing material upon obtaining actual knowledge of infringement;

6

(2) it receives no financial benefit directly attributable to infringing activity where the service provider has the right and ability to control activity; and

(3) it responded expeditiously to remove or disable access to material claimed to be infringing after receiving from the copyright holder a notification conforming with requirements of § 512(c)(3).

17 U.S.C. § 512(c)(1). Because the DMCA safe harbor is an affirmative defense, Amazon has the burden of establishing that it meets the statutory requirements. *See, Balvage v. Ryderwood Improvement and Serv. Ass'n, Inc.*, 642 F.3d 765, 776 (9th Cir.2011).

Amazon asserts that it is entitled to protection under the safe harbor because no evidence supports that Amazon knew of the alleged infringement before this action was filed and that it acted expeditiously once it was notified. Motion at 6-7. Amazon ignores that Kangaroo submitted countless notifications to Amazon informing it that other vendors were using Kangaroo's copyrighted photographs and selling counterfeit merchandise that infringed on Kangaroo's copyrights and trademarks. SCF, ¶¶ 28, 29. For months Kangaroo exchanged correspondence with Amazon to remove unauthorized sellers (including Amazon itself) who were selling counterfeit goods, in violation of Kangaroo's intellectual property rights. *Id.* Evidence supports a finding that Amazon knew of the infringement, but did nothing to actually correct it until after this suit was filed.

Amazon also cites to *Milo & Gabby* for the notion that it does not have the "ability to control" the infringing activity. Motion at 7. Amazon's reliance on *Milo & Gabby* is misplaced. *Milo & Gabby* dealt with sales of counterfeit goods, and use of copyrighted

images, where the Court found Amazon acted expeditiously to remove infringing material. *Milo & Gabby*, at \*8. Here, there is evidence that Kangaroo raised issues of improper use of copyrighted materials many times, and over a substantial period of time, and Amazon did not take any action to remove infringing material. SCF, ¶¶ 28, 29.

In sum, Amazon is asking the Court to uphold the notion that it is entitled to DCMA protection if it removes infringing material after it is sued, even where the copyright holder has reported infringement numerous times over a lengthy period. Amazon cannot carry its burden of showing it is entitled to protection under the DMCA as a matter of law in the face of this evidence.

### c. The BSA Does Not Give Amazon Unlimited License to Display and Sell Copyrighted Material

Amazon claims that Kangaroo's copyright claims fail because all copyrighted materials on display on Amazon's website were under license. Motion at 7. Amazon attempts to impute the approval of the Business Service Agreement ("BSA") by Yagoozon, an entity under common control, as being effective for all purposes against Kangaroo. This argument must fail because unauthorized display necessarily is outside the scope of Yagoozon's license.

Amazon correctly notes that it cannot have infringed for behavior authorized by a license. Motion at 7 (citing *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010), as amended on denial of reh'g (Feb. 17, 2011)). *MDY Industries* notes "[a] copyright owner who grants a nonexclusive, limited license ordinarily waives the right to

8

sue licensees for copyright infringement, and it may sue only for breach of contract." *Id.* Amazon ignores that *MDY Industries* continues: "[h]owever, if the licensee acts outside the scope of the license, the licensor may sue for copyright infringement. *Id.* (citing *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1087 (9th Cir.1989))." *Id.* To recover for copyright infringement based on breach of a license agreement, (1) the copying must exceed the scope of the defendant's license and (2) the copyright owner's complaint must be grounded in an exclusive right of copyright (e.g., unlawful reproduction or distribution). *See Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.,* 421 F.3d 1307, 1315–16 (Fed.Cir.2005).

As an initial matter, Kangaroo is not a party to the BSA. Kangaroo grants all of its authorized sellers a license to use Kangaroo's product images for sale of Kangaroo product. Kangaroo sellers do not have a license to use Kangaroo images for the sale of non-Kangaroo product. The license granted by Yagoozon to Amazon to use Kangaroo images cannot have exceeded the scope of Yagoozon's license. Moreover, Amazon cannot claim that its license under the BSA gives it the right to distribute actual product that is protected by copyright registrations. Nothing in the BSA language cited by Amazon purports to license the product itself for distribution. As noted *supra* at 5, the artwork on the emoji beach balls themselves is protected by copyright registrations, Amazon had notice of violations of these registrations, and did not cease selling counterfeit materials. SCF, ¶¶ 28-30. None of these actions is protected by the BSA.

.../

## V. EVIDENCE SUPPORTS KANGAROO'S STATE CLAIMS

### a. Amazon Is Liable For Negligence For Its Failure to Stop Selling Counterfeit Goods

Amazon claims that it is not liable for negligence because it does not owe Kangaroo any duty of care. To the extent Kangaroo is bound by Yagoozon's permissive license to Amazon allowing use of Kangaroo images, so too should Amazon be bound by contractual duties under the BSA, which would include the duty to exercise due care for product display pages.

Duty in Arizona is based on either recognized common law special relationships or relationships created by public policy. *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 416 P.3d 824, 829 (2018). Duties based on special relationships may arise from several sources, including special relationships recognized by the common law, contracts, or "conduct undertaken by the defendant." *Id.* (citing *Gipson v. Kasey,* 214 Ariz. 141, 145 ¶¶ 18–19; Restatement (Second) of Torts §§ 314A, 316–19 ("Second Restatement") (discussing duties based on common law special relationships); Second Restatement § 323 (discussing duty based on a negligent undertaking); *see also Diaz v. Phx. Lubrication Serv., Inc.*, 224 Ariz. 335, 339–40 ¶¶ 15–19, 230 P.3d 718, 722–23 (App. 2010) (discussing duty arising from a contract)·

Here, Amazon claims that it does not owe any duty to Kangaroo. However, Amazon's BSA sets forth a variety of contractual obligations, including the obligation by sellers to list and sell goods matching the product display page. Kangaroo, as the owner of

its images, was a third party beneficiary of the BSA. Amazon itself violated its policies with respect to listing and selling product that matches the corresponding product display page by selling goods that Kangaroo reported as counterfeit. SCF, ¶ 28.

Amazon argues that it is not liable for third-party sales and content under Kangaroo's negligence claim, however, Kangaroo's negligence claim seeks to hold Amazon liable for its own sales, not those of third parties.

### b. Amazon's Conduct Constitutes Unfair Competition Under the Lanham Act

Amazon argues that the Court should dismiss Plaintiff's unfair competition claim to the extent it is co-extensive with the Lanham Act claim. As set forth above, Amazon's attempts to dismiss Plaintiff's Lanham Act claims against third parties should fail. See Section IV.

Amazon further argues that the Court should dismiss Plaintiff's unfair competition claim because the Copyright Act preempts any such state law claim for "rights equivalent to those protected by the federal copyright laws". Motion at 14. While the conduct leading to liability is the same, recovery under the Lanham Act and Copyright Act for distribution of counterfeit products are unique. Just because Amazon has chosen to simultaneously violate both the Copyright Act and the Lanham Act does not allow it to avoid liability for both. Amazon's argument should be disregarded to the extent that it asserts no recovery is permissible.

…/

### c. Material Issues of Fact Exist for Kangaroo's Tortious Interference Claims

Amazon incorrectly claims that the only basis for Kangaroo's tortious interference claim is that Amazon mismanaged the Buy Box.[1] Motion at 14. Kangaroo's complaint clearly sets forth a number of grounds for tortious interference, including: "altering the UPC codes and PDP control to enable sales of unauthorized products" (Dkt. 1, Complaint, ¶ 114(b)); "fulfilling purchase orders intended for Plaintiff's authorized resellers through FBA with product from competitors or counterfeiters" (Id, ¶ 114(c)); and "actually selling counterfeit product" (Id., ¶ 114(d)). Amazon does not attack the remaining tortious interference claims in its Motion, therefore the tortious interference claims detailed above should be allowed to proceed.

### d. Kangaroo's Punitive Damages Request Is Supported by Ample Evidence

"Punitive damages require a demonstration that the defendant had an 'evil mind' and demonstrated 'aggravated and outrageous conduct.'" *Herbal Care Systems, Inc. v. Plaza,* 2009 WL 692338, at *5 (D.Ariz.2009). "In determining whether a defendant acted with an evil mind, courts look, in part, at 'the nature of the defendant's conduct, including the reprehensibility of the conduct and the severity of the harm likely to result, as well as the harm that has occurred[,] ... [t]he duration of the misconduct, the degree of defendant's

---

[1] During pre-motion meet and confers, Plaintiff agreed to withdraw the claims set forth in paragraphs 114(a) and (e), which set forth claims based on blocking authorized sales and forcing authorized sellers to lower prices to retain the Buy Box. The parties are preparing a stipulation to this effect.

awareness of the harm or risk of harm, and any concealment of it." *Thompson v. Better–Bilt Aluminum Products Co., Inc.,* 171 Ariz. 550, 556, 832 P.2d 203 (1992).

Courts have allowed punitive damages claims to proceed where evidence supported that a defendant misappropriating a trademark "were aware of customer confusion but did nothing to remedy it." *Tiffany & Co. v. Costco Wholesale Corp.,* 127 F. Supp. 3d 241, 262 (S.D.N.Y. 2015) (Denying motion for summary judgment on punitive damages request for trademark misappropriation claims under the Lanham Act and common law state unfair competition for Costco's use of "Tiffany" to describe diamond rings sold by Costco) (applying New York law). Similarly, here, Kangaroo has presented evidence that Amazon was made aware of its own counterfeit sales on multiple occasions in April and May 2017, but Amazon did not cease sales of these counterfeit items. SCF, ¶ 28. Specifically, Kangaroo raised merging of product listings and counterfeit sales, but the Amazon retail arm was permitted to override Kangaroo's intellectual property reports in the face of specific evidence that the merged products had different UPCs and manufacturers. Schnider Decl., ¶ 7 (Exh. W). A jury could find punitive damages are warranted under these facts.

## VI. CONCLUSION

For all the foregoing reasons, Amazon's Motion for Summary Judgment should be denied.

…/

…/

…/

DATED:  August 13, 2018.

CARPENTER, HAZLEWOOD, DELGADO & BOLEN LLP

By: _____
Timothy R. Grimm
Edith I. Rudder
1400 East Southern Avenue, Suite 400
Tempe, Arizona  85282
*Attorneys for Plaintiff*

14

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2018, a true and correct copy of the foregoing document was electronically filed with the Clerk of the United States District Court of the District of Arizona by using the CM/ECF system, and that service will be accomplished by the CM/ECF system to all counsel of record.

I further certify that I have mailed a true and correct copy of the foregoing document by United States Mail, first-class postage prepaid, sealed, as well as by email, addressed to:

James Edward Geringer (james.geringer@klarquist.com)
Klarquist, Sparkman, L.L.P.
1 World Trade Ctr.
121 SW Salmon St., Ste. 1600
Portland, Oregon 97204
*Attorneys for Defendant Amazon.com*

John A. Goldmark (johngoldmark@dwt.com)
Max B. Hensley (maxhensley@dwt.com)
Davis Wright Tremaine
1201 Third Ave., Ste. 2200
Seattle, WA 89101-3045
*Attorneys for Defendant Amazon.com*

_____
Vicki Goslin