**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kangaroo Manufacturing Incorporated, | No. CV-17-01806-PHX-SPL |
| Plaintiff, | **ORDER** |
| vs. | |
| Amazon.com Incorporated, | |
| Defendant. | |

Plaintiff Kangaroo Manufacturing Incorporated (the "Plaintiff") filed suit against Amazon.com Incorporated (the "Defendant") alleging trademark infringement, among other claims. (Doc. 1) The Defendant moved for summary judgement on each of the Plaintiff's claims (the "Motion"). (Doc. 72) The Motion was fully briefed on August 28, 2018. (Docs. 78, 82) The Court's ruling is as follows.

**I.    Background**

This action arises out of the alleged unauthorized sale of emoji beach balls. The Plaintiff is a corporation formed for the purpose of manufacturing products for resale on Amazon.com. (Doc. 1 at 2; Doc. 73 at 2) The Plaintiff now distributes several products, such as emoji beach balls and flamingo pool floats, through multiple third-party sellers on Amazon.com. (Doc. 73 at 2; Doc. 1 at 6) The Defendant operates the Amazon.com website and allows third parties to register as sellers on the website. (Doc. 73 at 1)

Third-party sellers create their own listing for a product that they plan to sell, including uploading their own images of the product, and set their own prices for the product. (Doc. 73 at 1) Each product is identified with a universal product code ("UPC code") and an Amazon Standard Identification Number, and each product also receives its own product detail page ("PDP"). (Doc. 1 at 2, 3) Multiple sellers can list the same product for sale on the same PDP. (Doc. 73 at 1–2). However, only one seller may be awarded the "Buy Box" on a PDP, which makes the seller's item the default for a customer's purchase. (Doc. 73 at 8) When a seller signs up to sell products on the Defendant's website, it agrees to the terms of the Amazon Services Business Solutions Agreement (the "BSA") and the policies incorporated by the BSA. (Doc. 73 at 2; Doc. 80 at 5)

At some point, the Plaintiff became aware that its products were being sold on the Defendant's website by sellers that were not authorized by the Plaintiff to do so. (Doc. 1 at 5) The Plaintiff also accuses the Defendant of selling counterfeit products itself. (Doc. 80 at 7) The Plaintiff alleges that these sales violate the Plaintiff's trademark and copyright interests. (Doc. 1 at 5) The Defendant's website has a process by which a seller can report infringement of intellectual property rights, and both parties assert that the Plaintiff submitted infringement reports. (Doc. 73 at 6, 7; Doc. 80 at 5, 6)

The Plaintiff initiated this lawsuit (the "Complaint") alleging claims for trademark and copyright infringement, among other claims. (Doc. 1) The Complaint alleges that the Defendant (i) failed to address the Plaintiff's claims of trademark and copyright infringement; (ii) continued to allow unauthorized sellers to sell the Plaintiff's products after the Plaintiff's infringement reports were made; (iii) re-sold some of the counterfeit product that it re-purchased from the Plaintiff as reimbursement for unauthorized sales; (iv) improperly managed the UPC codes assigned to the Plaintiff's products; and (v) profited from the fees it received from sales made by unauthorized sellers. (Doc. 1 at 10, 6, 8, 11, 14; Doc. 80 at 4) The Defendant moved for partial summary judgment on the Plaintiff's claims. (Doc. 72)

///

## II. Legal Standard

A court shall grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant is able to do such, the burden then shifts to the non-movant who, "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## III. Analysis

First, the Court notes that the relief requested in the Motion is borderline unintelligible. At times, the Defendant states that it seeks summary judgment on all claims, and, at other times, the Defendant seeks dismissal of some claims. (Doc. 72 at 6, 7, 20) In other parts of the Motion, the Defendant states that it is willing to move forward with three claims, Counts I, II and IV, but then later seeks dismissal of these claims, all while identifying the Motion as one for "partial summary judgment." (Doc. 72 at 1, 6, 12, 14, 19, 22) At this point, the Court will address the merits of each claim under the summary judgment standard. And where the Defendant has conceded that elements of certain claims should be preserved for trial, the Court will do so. Accordingly, each claim will be addressed in turn.

### A. Count I – Trademark Infringement and False Designation of Origin.

The Defendant states that it is not seeking summary judgment on the Plaintiff's Lanham Act claims to the extend that those claims allege that the Defendant "itself sold certain of the accused products." (Doc. 72 at 6)  The Court finds that the allegations set forth by the Plaintiff in Count I each focus on the Defendant's actions in advertising, selling and trading on the Plaintiff's registered trademark. (Doc. 1 at 5–6, stating that "Unauthorized sales on Amazon have included . . . products sold by Amazon itself.") Accordingly, the Court will preserve the Plaintiff's trademark infringement claims pursuant to 15 U.S.C. § 1114 and 15 U.S.C. § 1125 for trial, and the Motion will be denied as to Count 1.

### B. Count II – Use of Counterfeit Trademarks.

In the same vein, the Court will not address Count II under the summary judgment standard. (Doc. 72 at 6, stating that the Defendant is not seeking summary judgment on the Plaintiff's Lanham Act claims to the extent that those claims arise out of the Defendant's alleged sale of infringing products.)  The Court finds that the allegations set forth by the Plaintiff in Count II focus on the Defendant's actions in selling products using counterfeit trademarks. (Doc. 1 at 5, 8)  Accordingly, the Court will preserve the Plaintiff's use of counterfeit trademarks claims pursuant to 15 U.S.C. § 1117 and 15 U.S.C. § 1116(d) for trial, and the Motion will be denied as to Count 2.

### C. Count III – Copyright Infringement.

The Plaintiff alleges that the Defendant infringed on the Plaintiff's registered copyright interests by displaying images of the Plaintiff's copyrighted material, images of the emoji beach balls, to distribute counterfeit emoji beach balls. (Doc. 1 at 9; Doc. 73 at 5)  The Defendant seeks summary judgment on the Plaintiff's copyright infringement claim, alleging that (i) third parties were responsible for uploading the protected images onto Amazon's website; (ii) the Defendant is protected under the Digital Millennium Copyright Act ("DMCA") for allowing the protected images to be displayed on its website; and (iii) the Defendant had a license to display the protected material. (Doc. 72 at 7–8); 17

U.S.C. § 512.

In order to establish a claim for copyright infringement, the Plaintiff must prove (1) that it owns a valid copyright in its work, and (2) that the Defendant copied protected aspects of the work's expression. *Skidmore for Randy Craig Wolfe Tr. v. Led Zeppelin*, 905 F.3d 1116, 1125 (9th Cir. 2018) (citing *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116–17 (9th Cir. 2018)). Whether a defendant copied protected expression contains two separate and distinct components: "copying" and "unlawful appropriation." *Rentmeester*, 883 F.3d at 1117. A plaintiff must be able to demonstrate that a defendant copied its work, as independent creation is a complete defense to copyright infringement. *Skidmore*, 905 F.3d at 1125 (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345–46, (1991)). In cases where there is no direct evidence of copying, the plaintiff "can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Skidmore*, 905 F.3d at 1125 (citing *Rentmeester*, 883 F.3d at 1117). "When a high degree of access is shown," a lower amount of similarity is needed to prove copying. *Skidmore*, 905 F.3d at 1125 (citing *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003)). "To prove copying, the similarities between the two works need not be extensive, and they need not involve protected elements of the plaintiff's work. They just need to be similarities one would not expect to arise if the two works had been created independently." *Skidmore*, 905 F.3d at 1125 (citing *Rentmeester*, 883 F.3d at 1117).

It is undisputed that the Plaintiff owns valid copyright interests in the photographs at issue. (Doc. 1 at 9; Doc. 72 at 10) The Defendant also admits that it had access to the Plaintiff's protected photographs, as the Plaintiff, and potentially other third-party sellers, uploaded the photographs to the PDPs hosted by the Defendant. (Doc. 72 at 10–11) The Plaintiff alleges that a single PDP is used for a product with a particular UPC code, and multiple sellers can attempt to sell a single product through a single PDP. (Doc. 1 at 2–3; Doc. 73 at 10) In the Motion, the Defendant states that any images of products for sale on the website must be uploaded by third parties. (Doc. 72 at 10–11) Therefore, the Court

finds that the Plaintiff has sufficiently established that the Defendant had access to the Plaintiff's protected photographs.

In order to establish unlawful appropriation, a plaintiff must show substantial similarity involving parts of the plaintiff's work that are original and therefore protected by copyright. *Skidmore*, 905 F.3d at 1125 (citing *Rentmeester*, 883 F.3d at 1117). Courts employ separate tests to determine whether an allegedly infringing work is substantially similar to the original work. *Id.* The extrinsic test is an objective comparison of protected areas of a work accomplished by "breaking the works down into their constituent elements, and comparing those elements" to determine whether they are substantially similar. *Skidmore*, 905 F.3d at 1125 (citing *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004)). The intrinsic test is concerned with a subjective comparison of the works, as it asks "whether the ordinary, reasonable person would find the total concept and feel of the works to be substantially similar." *Skidmore*, 905 F.3d at 1125 (citing *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000)).

The Plaintiff uses a conclusory statement to address whether the images at issue are substantially similar to the Plaintiff's protected photographs. (Doc. 1 at 9) The Defendant argues that it cannot be held liable for copying the Plaintiff's protected material because sellers, including the Plaintiff, upload their own materials to the PDP hosted by the Defendant using an automated process. (Doc. 72 at 10) The Defendant argues that, without more evidence demonstrating that the Defendant played an active role in reviewing the material uploaded through this automated process, the Plaintiff cannot establish the "copying" element of its claim. (Doc. 72 at 10–11) Furthermore, the Defendant alleges that the Plaintiff's claim for copyright infringement must fail because (i) the Defendant had a license to use the photographs uploaded by the Plaintiff and (ii) the Defendant is protected from liability under the DMCA which provides safe harbor protections for online service providers for any copyright infringement that occurs through the use of the service. (Doc. 72 at 11)

In the Complaint and in its response to the Motion (Doc. 78), the Plaintiff fails to

refute the Defendant's argument that it was a passive publisher of the protected materials that were uploaded by sellers, including the Plaintiff, to the Defendant's website. Instead, the Plaintiff argues that the Defendant is liable for copyright infringement due to its failure to remove images that the Plaintiff reported through the Defendant's infringement reporting system. (Doc. 78 at 4) The Digital Millennium Copyright Act places the burden of policing copyright infringement on the copyright owner, not on the person or firm storing and hosting the material. *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 603 (9th Cir.). In order to establish a defense under the DMCA, the Defendant must demonstrate that it (i) either did not have "actual knowledge that the material or an activity using the material on the system or network" infringed on the Plaintiff's copyright interests, was "not aware of facts or circumstances from which infringing activity is apparent," or, upon obtaining such knowledge, acted "expeditiously to remove, or disable access to, the material"; (ii) did not "receive a financial benefit directly attributable to the infringing activity"; and (iii) responded "expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity" upon notice of a claim of infringement.[1] 17 U.S.C. § 512(c)(1).

The Court finds that there are genuine disputes as to the material facts on when and whether the Defendant knew of the infringing material on its website and whether the Defendant took reasonable steps to quickly remove that content. The DMCA only provides the Defendant with safe harbor protection if it "expeditiously removed or disabled access to infringing material." 17 U.S.C. § 512. The Plaintiff alleges that it registered several complaints with the Defendant alerting it to the infringing photographs and asking for the infringing content to be removed. (Doc. 1 at 5; Doc. 80 at 4, 5) The Defendant states that the Plaintiff "never submitted an infringement report regarding the images used" for the Plaintiff's emoji beach balls. (Doc. 73 at 7) The Defendant states that it removed infringing content "usually within days" of the Plaintiff's complaints, but the Plaintiff disputes that

---

[1] In order to be eligible for safe harbor protection, the Defendant must also "have a policy to terminate users who repeatedly infringe on copyrights, and it must implement that policy reasonably." *Ventura*, 885 F.3d at 604.

7

the Defendant "responded and removed material when appropriate." (Doc. 73 at 7; Doc. 80 at 5, 6) The Plaintiff also argues that the Defendant itself continued to use the protected images to sell counterfeit products after the Plaintiff's notifications of infringement. (Doc. 80 at 7) Based on these disputed facts, which are essential to the Defendant's defense against the Plaintiff's copyright infringement claim, the Motion must be denied as to Count 3.

D. **Count IV – Negligence.**

The Plaintiff alleges claims for negligence and negligence per se based on (i) the Defendant's failure to properly administer the UPC codes assigned to the Plaintiff's products and (ii) the Defendant's actions in reselling counterfeit merchandise that it purchased from the Plaintiff.[2] (Doc. 1 at 11–12) Each claim is addressed in turn.

1. Negligence

In order to establish a prima facie negligence case, the Plaintiff must show the existence of a duty, breach of that duty, causation, and damages.[3] *Cloud v. Pfizer Inc.*, 198 F. Supp. 2d 1118, 1138 (D. Ariz. 2001) (citing *Taeger v. Catholic Family & Cmty. Servs.*, 995 P.2d 721, 730 (App.1999)); *Ballesteros v. United States*, 2018 WL 3774663, at 2 (D. Ariz. Aug. 1, 2018) (stating a plaintiff must establish "by a preponderance of the evidence" the elements of a negligence claim). Duty is defined as an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Gipson*, 150 P.3d at 230. Standard of care refers to "[w]hat the defendant must do, or must not do, . . . to satisfy the duty." *Coburn v. City of Tucson*, 691 P.2d 1078, 1080 (Ariz. 1984).

The Plaintiff alleges that the Defendant improperly merged the UPC code assigned to the Plaintiff's product with the code assigned to a competitor's product. (Doc. 80 at 7) The Plaintiff argues that the Defendant owed a duty to properly administer the PDPs and

---

[2] The Court will not address the remaining claims pleaded under Count 4 in light of the parties' Stipulation to Dismiss Allegations/Claims (Doc. 76).
[3] The Defendant has stipulated that Arizona law applies for the purposes of this Motion. (Doc. 72 at 14)

UPC codes for the Plaintiff's products listed on the Defendant's website. (Doc. 1 at 11) The Plaintiff argues that the Defendant breached its duty to administer the PDPs and UPC codes associated with the Plaintiff's products when it negligently reassigned the UPC code associated with the Plaintiff's emoji beach ball to a competitor. (Doc. 1 at 11) The Defendant argues that it cannot be liable for negligence because any content listed on a PDP is provided by third-party sellers and is not created by the Defendant. (Doc. 72 at 16)

The Defendant states that in the process of a seller registering to sell its products on Amazon.com, the seller agrees to the terms of the BSA. (Doc. 73 at 2) It is well settled that a party to a contract has the corresponding obligation to perform its contractual duties in good faith. *Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 F. App'x 406, 408 (9th Cir. 2017). The terms of the BSA state that it will allow sellers to list their products "on a particular Amazon site, and conduct merchandising and promote" the sellers' products as permitted by the Defendant. (Doc. 75-1 at 16) The BSA also states that the Defendant has the right in its sole discretion to "determine the content, appearance, design, functionality and all other aspects of the Amazon Sites, including by redesigning, modifying, removing or restricting access to any of them, and by suspending, prohibiting or removing any listing."[4] (Doc. 75-1 at 21)

The terms of the BSA make it clear that the Defendant had full control over the content displayed on its websites. The Defendant's pleadings demonstrate that it took the responsibility of managing and cultivating the content provided to it. Therefore, the issue is not the content that was provided to the Defendant, but the Defendant's alleged mismanagement of the content through conflating UPC codes in a manner that harmed the Plaintiff. (Doc. 80 at 7, stating the Defendant "improperly merged listings for the Kangaroo emoji beach balls and a competitor's product, took down Kangaroo sellers, and refused to separate the two products despite Amazon's own policy that every UPC have its own

---

[4] In the Product Ads Service Terms section of the BSA, the contract states that the Defendant "may in [its] sole discretion restrict, modify or otherwise determine the content, appearance, design, functionality and all other aspects of Your Product Ads." (Doc. 75-1 at 44) Based on the pleadings, it is unclear whether the Plaintiff participated in the Products Ads Service.

9

unique ASIN.") Furthermore, it is undisputed that the Defendant made adjustments to the PDPs displaying the Plaintiff's products and the assignment of the UPC codes for products displayed on PDPs. (Doc. 73 at 8, stating "Amazon choses which information to include on the product detail page. . . .").

The Defendant admits that it "combine[s] the best product data from across various seller submissions," and that the "product detail page shows information selected by Amazon to represent the product." (Doc. 73 at 8) However, the Defendant argues that it cannot be held liable for content created by third-parties because, according to 47 U.S.C. § 230, the operator of an interactive computer service has full immunity from claims related to the information it publishes, so long as the information is created by third parties. 47 U.S.C. § 230 (c)(1) (stating "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider"); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) (stating "so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process.").

Under the statute, "interactive computer service" is broadly defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230 (f). In this case, as other courts have held, the Court finds that the Defendant was acting as an interactive computer service and the Plaintiff's claims arise out of the Defendant's course of action while acting as such. *Carafano*, 339 F.3d 1119, 1122 (9th Cir. 2003) (stating "Congress granted most Internet services immunity from liability for publishing false or defamatory material so long as the information was provided by another party."). The Defendant is therefore immune from the Plaintiff's negligence claim. Accordingly, the Motion will be granted as to the Plaintiff's negligence claims.

### 2. Negligence Per Se

Negligence per se is not a cause of action separate from common law negligence. It is a doctrine under which a plaintiff can establish the duty and breach elements of a negligence claim based on a violation of a statute that supplies the relevant duty of care. *Craten v. Foster Poultry Farms Inc.*, 305 F. Supp. 3d 1051, 1054 n.2 (D. Ariz. 2018); *Griffith v. Valley of Sun Recovery & Adjustment Bureau, Inc.*, 613 P.2d 1283, 1285 (Ct. App. 1980) (stating "negligence per se applies when there has been a violation of a specific requirement of a law or an ordinance"). In the Complaint, the Plaintiff alleges the Defendant's "[d]isposal of counterfeit products by sale on the PDP for Kangaroo products was negligence per se." (Doc. 1 at 12) The Plaintiff does not identify a statute the provides any basis for its argument that the Defendant was negligent per se. Accordingly, the Court declines to find that the Defendant was negligent per se on the basis of the Plaintiff's allegation that the Defendant re-sold counterfeit merchandise, and the Defendant's Motion will be granted as to Count 4.

### E. Count V – Unjust Enrichment.

A claim for unjust enrichment may exist where a person confers a benefit to his detriment on another, and allowing the other to retain that benefit would be unjust. *USLife Title Co. of Ariz. v. Gutkin*, 732 P.2d 579, 584 (App. 1986). To prevail on an unjust enrichment claim, a plaintiff "must show: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy." *Trustmark Ins. Co. v. Bank One, Ariz. NA,* 48 P.3d 485, 491 (App. 2002); *Arnold & Assocs., Inc. v. Misys Healthcare Sys., a div. of Misys, PLC*, 275 F. Supp. 2d 1013, 1024–25 (D. Ariz. 2003) (stating "a plaintiff must show that, (1) it conferred a benefit upon defendant, (2) defendant's benefit is at plaintiff's expense, and (3) it would be unjust to allow defendant to keep the benefit.").

Where a specific contract exists between the parties, the doctrine of unjust enrichment is unavailable. *Trustmark Ins. Co.*, 48 P.3d at 492; *see also Brooks v. Valley*

*Nat. Bank*, 548 P.2d 1166, 1171 (1976) (stating "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application."); *Baughman v. Roadrunner Commc'ns*, LLC, 2014 WL 3955262, at 4 (D. Ariz. Aug. 13, 2014) (stating "the essence of an unjust enrichment claim is that there is no direct relationship between the parties under which the plaintiff may recover.").

The Plaintiff alleges that the Defendant was unjustly enriched through its sale of unauthorized products and its receipt of fees on unauthorized sales made by third-party sellers.[5] The Defendant states "when a seller registers to sell on Amazon, it agrees to the terms of the [BSA], and the policies incorporated by the [BSA]." (Doc. 73 at 2) This fact was not disputed by the Plaintiff. (Doc. 80 at 3)

The Court finds that a claim for unjust enrichment is inappropriate. First, the Defendant states, and the Plaintiff does not dispute, that one of the bases for the Plaintiff's claims is "(1) Amazon 'required Kangaroo's authorized sellers to lower the sales prices of Kangaroos products to retain the PDP buy box'".[6] (Doc. 73 at 6; Doc. 80 at 5) This allegation arises squarely out of the agreement made between the Plaintiff or other authorized sellers that were party to the BSA. Therefore, an unjust enrichment claim on this basis is unavailable. The second basis for the Plaintiff's unjust enrichment claim is "(2) Amazon 'overcharged for storage/fulfillment fees and received these fees from counterfeit sales.'" (Doc. 73 at 6) However, per the Stipulation to Dismiss Allegations/Claims filed with the Court, the Plaintiff has specifically abandoned that claim. (Doc. 76 at 2, stating "Paragraph 103, subparagraph a "overcharging for storage and fulfillment.") This allegation was dismissed with prejudice. (Doc. 76 at 1) Accordingly, the Motion will be granted as to Count 5.

///

---

[5] The Court will not address the remaining claims pleaded under Count 5 in light of the parties' Stipulation to Dismiss Allegations/Claims (Doc. 76).
[6] Based on the Stipulation to Dismiss Allegations/Claims (Doc. 76) provided to the Court, the Plaintiff's bases for its unjust enrichment claim include: (i) the Defendant's action of "selling unauthorized and counterfeit products," and (ii) the Defendant "enabling sales of unauthorized products and receiving fees on the unauthorized sales." (Doc. 1 at 14)

## F. Count VI – Unfair Competition.

The Court will preserve the Plaintiff's unfair competition claim as established by allegations that the Defendant (i)"actually sold counterfeit products in direct competition with the Plaintiff;"(ii) "diverted sales and associated revenue from the Plaintiff to competitors or counterfeiters;" and (iii) "trades on Plaintiff's goodwill and constitutes unfair competition." (Doc. 1 at 15; Doc. 72 at 19, stating that the Defendant is not seeking summary judgment on the Plaintiff's unfair competition claim to the extent that the claim arises out of the Defendant's alleged sale of infringing products.)

However, the Court will evaluate the Plaintiff's allegations that the Defendant harmed the Plaintiff by earning fees related to sales made by unauthorized competitors and counterfeiters. (Doc. 72 at 19) In Arizona, the common law doctrine of unfair competition "encompasses several tort theories, such as trademark infringement, false advertising, 'palming off,' and misappropriation." *ACT Grp. Inc. v. Hamlin*, 2012 WL 2976724 at 6 (D. Ariz. July 20, 2012) (citing *Fairway Constructors, Inc. v. Ahern*, 193 Ariz. 122, 970 P.2d 954, 956 (Ct. App. 1998)). Under Arizona law, the test for unfair competition is whether the public is likely to be confused. *Doe v. Arizona Hosp. & Healthcare Ass'n*, 2009 WL 1423378 at 11 (D. Ariz. Mar. 19, 2009) (quoting *Boice v. Stevenson*, 187 P.2d 648, 653 (Ariz. 1947)). "[A]n unfair competition claim is preempted unless it alleges elements that make it qualitatively different from a copyright infringement claim." *Id.*

The Plaintiff alleges that the Defendant profited from the confusion resulting from sales made by "unauthorized competitors and counterfeiters." (Doc. 1 at 15) However, the Defendant states that the Plaintiff's "unfair competition claim is coextensive with its Lanham Act claims." (Doc. 73 at 6) The Plaintiff did not dispute this fact. (Doc. 80 at 5) Accordingly, the Motion will be granted as to Count 6.

## G. Count VII – Tortious Interference with Prospective Contract.

In order to prove a claim for tortious inducement to breach a contract, the claimant must show: (1) the existence of a contract, (2) the defendant's knowledge thereof, (3) a breach of the contract induced by the defendant, (4) the absence of privilege or justification,

and (5) damages resulting therefrom, including punitive damages if supported by the facts. *Middleton v. Wallichs Music & Entm't Co.*, 536 P.2d 1072, 1074 (1975); *Dube v. Likins*, 167 P.3d 93, 98 (Ct. App. 2007) (stating "a cause of action for tortious interference accrues when the plaintiff knew or reasonably should have known of the intentional interference with the plaintiff's business expectancy, resulting in its termination; and the plaintiff realized he or she was damaged by that termination."*)*.

The Plaintiff alleges that the Defendant profited from the confusion resulting from sales made by "unauthorized competitors and counterfeiters." (Doc. 1 at 15) However, the Defendant states that "Amazon's management of the Buy Box" represents "the sole basis for Kangaroo's tortious interference claim." (Doc. 73 at 6) The Plaintiff did not dispute this fact. (Doc. 80 at 5) Per the Stipulation to Dismiss Allegations/Claims filed with the Court, the Plaintiff has specifically abandoned its allegation on this basis. (Doc. 76 at 2, stating "Paragraph 114, subparagraph e "forcing authorized sellers to reduce their prices to retain the Buy Box.") This allegation was dismissed with prejudice. (Doc. 76 at 2). The Court notes the Plaintiff's argument that it still intended to move forward with this claim on other bases, but this argument is not supported by the Plaintiff's own statement of facts. (Doc. 78 at 12; Doc. 80 at 5) Accordingly, the Motion will be granted as to Count 7.

Accordingly,

1. **IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. 72) is granted in part as to Counts 4, 5, 6, and 7; and

2. **IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. 72) is denied in part as to Counts 1, 2, and 3.

Dated this 20th day of March, 2019.

Honorable Steven P. Logan
United States District Judge